# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 2, 2026

Lyle W. Cayce
Clerk

No. 24-40727

—————————

United States of America,

*Plaintiff—Appellee*,

*versus*

William Scott Kendall,

*Defendant—Appellant*.

—————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:23-CR-501-1

—————————————————————

Before Southwick, Higginson, and Douglas, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

In 2024, the defendant in this case was convicted and sentenced to a period of imprisonment with supervised release to follow. Later that year, the district court revoked the supervised release, imposed a short custodial sentence, and required supervised release. The current appeal is from that judgment of revocation, and the argument is that some of those conditions were improperly pronounced at the sentencing hearing.

In 2025, after briefs were filed in this appeal, the district court revoked this second release on supervision, imposed a new brief custodial sentence,

and pronounced new conditions for supervised release. Is the appeal from the first revocation moot? Yes, except as to the conditions that are the basis of the second revocation. Those conditions were improperly pronounced. We VACATE in part and DISMISS in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2024, William Scott Kendall pled guilty to possession of a firearm and ammunition by a convicted felon, a violation of 18 U.S.C. § 922(g)(1). The district court sentenced Kendall to an eighteen-month term of imprisonment followed by three years of supervised release. The court imposed the standard conditions of supervised release, a mandatory condition that Kendall cooperate in the collection of DNA, and two special conditions: substance abuse treatment and participation in a battering intervention and prevention program. Kendall timely appealed, arguing his conviction was invalid under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). This court affirmed the judgment of conviction and the sentence in July 2025. *United States v. Kendall*, No. 24-40441, 2025 WL 1983938, at *1–2 (5th Cir. July 17, 2025).

Kendall's period of supervision began on August 30, 2024. **ROA.295.** Less than a month later, the United States Probation Office filed a petition alleging that Kendall had violated two conditions of his supervision. First, he had refused to participate in the substance abuse treatment program. Second, he had violated 18 U.S.C. § 111(a)(1) by sending threats to his probation officer. The district court held a hearing on the petition, where Kendall pled true to both allegations.

The district court revoked Kendall's supervised release and sentenced him to six months in custody and thirty months of supervised release. The district court's written judgment, which we will refer to as the First Revocation Judgment, imposed these conditions of supervised release:

1) a mandatory condition that Kendall cooperate in the collection of DNA; 2) fifteen standard conditions of supervision; 3) special conditions on substance abuse treatment and abstinence, mental health treatment, anger management, battering intervention and prevention, location monitoring, and home detention. The home detention requirement was listed under the "Location Monitoring" header.

Kendall timely appealed the conditions of supervised release from the First Revocation Judgment. Kendall contends that many of the conditions set out in the written judgment, namely standard conditions 2–15 and the home detention special condition, improperly conflicted with the district court's oral pronouncement.

On July 7, 2025, while this appeal was pending, Kendall's supervised release from his new sentence was revoked. Kendall pled true to two violations. First, he had failed to participate in the location monitoring program. Second, he had failed to follow the instructions of a probation officer. The district court sentenced Kendall to three months of incarceration and twenty-four months of supervised release in what we will call the Second Revocation Judgment. The court reimposed the same conditions from the First Revocation Judgment without the mental health treatment special condition.

## DISCUSSION

The first issue in this appeal is whether the revocation of Kendall's supervised release during the pendency of this appeal rendered the appeal moot. If the appeal is not moot, the second issue is whether any of the supervisory-release conditions invalidly conflicted with the court's oral pronouncement of Kendall's sentence. *See United States v. Diggles*, 957 F.3d 551, 557 (5th Cir. 2020) (*en banc*).

Mootness is jurisdictional, so we must begin there. *See Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006).

## I.    *Mootness*

"[F]ederal courts may not 'give opinions upon moot questions or abstract propositions.'" *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (quoting *Mills v. Green,* 159 U.S. 651, 653 (1895)).  An appeal is moot when a court cannot grant "any effectual relief whatever" to the appellant. *Id.* (quotation omitted).  "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *United States v. Vega*, 960 F.3d 669, 672 (5th Cir. 2020) (alteration in original) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012)).

The judgment under review, the First Revocation Judgment, has been superseded by the Second Revocation Judgment, a judgment that has not been appealed.  Accordingly, the Government contends this court can no longer grant any effectual relief to Kendall.

Kendall counters with two arguments as to why this case is not moot: (1) this case falls under the exception for injuries capable of repetition yet evading review and (2) Kendall continues to suffer collateral consequences of the judgment he appeals from.

### A.    *Capable of Repetition Yet Evading Review*

The exception to mootness for injuries "capable of repetition yet evading review" applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alterations in original) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472,

481 (1990)). It is a doctrine for "exceptional situations." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

In *Spencer*, the Court refused to apply the exception to a parole revocation because the petitioner had not shown "the time between parole revocation and expiration of sentence is always so short as to evade review" or "a reasonable likelihood that he will once again be paroled and have that parole revoked." *Id.* at 18. Kendall has not demonstrated that the period of his original revocation sentence — six months in prison and three years of supervised release — was too short to litigate an appeal. And the likelihood that his parole would be revoked depends on his noncompliance with the law. The Supreme Court has "consistently refused" to find the case-or-controversy requirement satisfied by the possibility of noncompliance with valid criminal laws. *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018).

Moreover, Kendall challenges the improper pronouncement of the conditions of his initial supervised release. He does not allege that a similar error of pronouncement occurred in the most recent revocation, which is some indication that the alleged error did not repeat itself. The record does not evidence any recurrence of the error that evades review.

This exception to mootness does not apply.

### B.    *Collateral Consequences*

In criminal cases, a challenge to a sentence or conviction is not moot when there are collateral consequences to the appealed-from judgment. *Spencer*, 523 U.S. at 7. Collateral consequences are "further penalties or disabilities." *St. Pierre v. United States*, 319 U.S. 41, 43 (1943). Collateral consequences are presumed when defendants challenge their criminal convictions. *See Sibron v. New York*, 392 U.S. 40, 55 (1968). Kendall asserts there are collateral consequences here.

No. 24-40727

When defendants argue there are continuing effects of convictions, such as the terms of a sentence or a parole revocation, they must show collateral consequences sufficient to "meet Article III's injury-in-fact requirement." *See Spencer*, 523 U.S. at 13–14. To elaborate, that means Kendall must "identify[] some ongoing 'collateral consequenc[e]' that is 'traceable' to the challenged portion of the sentence and 'likely to be redressed by a favorable judicial decision.'" *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (second alteration in original) (quoting *Spencer*, 523 U.S. at 14).

A similar but not identical set of facts was analyzed in an opinion from the United States Court of Appeals for the Eighth Circuit. *See United States v. Wynn*, 553 F.3d 1114. In *Wynn*, that court held a challenge to a since-revoked condition of supervision was not moot "to the extent that [the defendant] alleges the revocation was based on a purported violation of an invalid condition." *Id.* at 1119. That reasoning is sound. Nonetheless, *Wynn* is distinguishable from this case because there, both the original judgment and the judgment of revocation were appealed. *Id.* at 1116. Here, by contrast, Kendall's only appeal was from the first judgment.

We also agree with a similar but nonprecedential opinion of this court stating that if a challenged condition of supervision from one judgment was the basis for a later revocation and a new judgment, the case is not moot. *United States v. Mallard*, No. 21-60407, 2022 WL 226001, at *1 (5th Cir. Jan. 24, 2022). There, as here, only the original judgment was before the court. *Id.* A distinction from this case, though, is that the *Mallard* record reveals that this court's opinion predated the final judgment in the second revocation. *Id.*; Judgment of Revocation, *United States v. Mallard*, No. 3:18-CR-90-1 (S.D. Miss. Jan. 27, 2022), Dkt. No. 99. We find that difference immaterial. As the *Mallard* panel held, the validity of the second revocation turned on the validity of the condition imposed after the first, making the

later revocation a "collateral consequence" of the earlier special condition. *Id.* (citing *Spencer*, 523 U.S. at 7). The only merits question there, and the only one here, is the validity of special conditions on which the later revocation was based. *Id.*

The non-precedential *Mallard* opinion is the only closely analogous Fifth Circuit precedent. We therefore explore the issue of mootness in more detail. As stated above, we consider whether Kendall, as a defendant challenging the conditions of an expired sentence, has "identif[ied] some ongoing 'collateral consequenc[e]' that is 'traceable' to the challenged portion of the sentence and 'likely to be redressed by a favorable judicial decision.'" *Juvenile Male*, 564 U.S. at 936 (second alteration at original) (quoting *Spencer*, 523 U.S. at 7, 14). The only element that could be disputed is the third one: redressability.

The difficulty here is that Kendall is no longer directly subject to the revocation judgment that he has brought to us. "To secure appellate review of a judgment or order, a party must file a notice of appeal from that judgment or order." *Manrique v. United States*, 581 U.S. 116, 120 (2017); *see* 28 U.S.C. § 1291. Nonetheless, even though we cannot affirm, reverse, or vacate the later judgment that establishes Kendall's current conditions of supervision, there is a collateral consequence if determining the validity of the prior judgment that he does challenge sufficiently affects the later one that he does not.

One relevant principle is that a defendant's challenge to an already served sentence is not moot if they remain subject to a term of supervised release. *E.g.*, *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006). In such circumstances, the challenges are not moot because of "the possibility that the district court may alter [the] period of supervised release pursuant to 18 U.S.C. § 3583(e)(2)" if that court "determines that [the defendant] has

served excess prison time."[1]  *Id.*  For the *Johnson* analysis to apply, the district court whose order we review must retain authority over the defendant's sentence.  *See Herndon v. Upton*, 985 F.3d 443, 448 (5th Cir. 2021).

This court recently applied *Herndon* and *Johnson* to conclude that a defendant's challenge to a revocation judgment was not moot despite a later superseding revocation because, "were [the defendant] to prevail in the first appeal, he could seek modification, and ultimately termination, of his supervised-release term on the ground that he served . . . excess prison time."  *United States v. Baldemoro*, No. 24-20451, 2026 WL 1730862, at *3 (5th Cir. June 16, 2026).  A similar rationale applies here.

Were we to set aside the challenged terms of supervised release — the violation of which led to the current judgment of revocation and new sentence — that holding could be used by Kendall as the basis for a motion under 28 U.S.C. § 2255 before the district court, which possesses the authority to modify his sentence.  The motion would claim a right to be released on the ground that his current sentence was imposed in violation of

---

[1] 18 U.S.C. § 3583(e)(1) provides that, after considering the Section 3553(a) sentencing factors, the sentencing court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."

18 U.S.C. § 3583(e)(2) additionally authorizes the court to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision" after accounting for the same factors.

federal law because he had not violated any properly imposed condition of supervision.

A favorable ruling by this court would not suffer the fatal flaw of being an advisory opinion. *See United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947). It would be a conclusive determination of the validity of the district court's finding that a defendant had violated a legally enforceable obligation. The holding would invalidate the same district court's earlier sentence, and thereby require, if properly presented, an invalidation of his current sentence. The propriety of Kendall's current sentence is, unlike the collateral consequence asserted in *Juvenile Male*, "contingent upon the validity of the conditions of his [prior] federal supervision order." *See* 564 U.S. at 937 (quotation omitted). Therefore, our decision will "likely redress some collateral consequence of the registration conditions" and be more than a "useful precedent." *Id.*

We also identify the limit of our holding that we have jurisdiction because Kendall's injury can be redressed. The only redressable injury arises from conditions of supervised release in the First Revocation Judgment that were later found to have been violated and were the basis for the Second Revocation Judgment.

In this case, Kendall's relevant revocation was premised on his failure to participate in the location monitoring program and failure to follow the instructions of a probation officer. Kendall challenges only one element of the location monitoring condition that restricted him to his residence. Accordingly, his appeal remains live only as to the home detention special condition and Standard Condition 13, which required Kendall to follow the instructions of his probation officer.

## II.    *Validity of Conditions Used to Support the Second Revocation*

Kendall contests the oral pronouncement of the non-mandatory conditions of his supervised release. The Government concedes that the standard conditions of release were not orally pronounced but maintains that the home detention condition was properly imposed.

"When a defendant objects to a condition of supervised release for the first time on appeal, the standard of review depends on whether he had an opportunity to object before the district court." *United States v. Grogan*, 977 F.3d 348, 352 (5th Cir. 2020) (citing *Diggles*, 957 F.3d at 559–60). If a defendant had an opportunity to object at sentencing, we review for plain error. *Id.* Otherwise, if the defendant did not have the opportunity to object, we review for abuse of discretion. *Id.* Here, as explained below, we conclude that Kendall did not have an opportunity to object to the conditions and therefore apply the abuse of discretion standard of review.

"[W]e have long held that a defendant has a constitutional right to be present at sentencing." *United States v. Vega*, 332 F.3d 849, 852 (5th Cir. 2003). To substantiate this right, this court held *en banc* that due process requires that a district court provide a defendant: (1) "notice of the sentence" and (2) "an opportunity to object." *Diggles*, 957 F.3d at 560. These requirements are met through oral pronouncement of the sentence. *See id.* at 556–57. In the event of a conflict between the oral pronouncement and written judgment, the oral pronouncement controls. *United States v. Prado*, 53 F.4th 316, 318 (5th Cir. 2022). A conflict occurs if the written judgment imposes "more burdensome requirement[s]" than the pronouncement. *United States v. Bigelow*, 462 F.3d 378, 383 (5th Cir. 2006).

At sentencing, the exchange on the conditions of supervised release went as follows:

No. 24-40727

[THE COURT:] I am going to impose the conditions addressed by Probation here. That's that you participate in an outpatient substance abuse treatment program, outpatient alcohol abuse treatment program, that you submit to substance abuse testing, that you not use or possess alcohol, that you participate in a mental health treatment program, participate in a mental health treatment program specifically designed for anger management, that you participate in a Battering Intervention and Prevention Program. And I am going to impose location monitoring for a period of six months, the type of technology to be determined by the Probation officer. Anything on the special conditions, Mr. Reyna?

MR. REYNA: No, Your Honor.

THE COURT: Okay, they will be imposed as stated and as set out in the Appendix there.

The Government argues that while the district court did not specifically mention home detention, the court properly adopted a list of conditions: the appendix referenced at the hearing. Kendall counters that he did not have the requisite notice and opportunity to object to the adoption. Kendall has the right of it.

In *Diggles*, this court explained *en banc* that "[o]ral in-court adoption of a written list of proposed conditions provides the necessary notice" at a sentencing hearing. 957 F.3d at 560. Often, conditions are adopted from a Presentence Investigation Report ("PSR"), but a court may also adopt documents taking "a form other than the PSR." *Id.* at 561 n.5. Before adopting any document, "the court must ensure, as it does with the PSR, that the defendant had an opportunity to review it with counsel." *Id.* This requirement mirrors the rule that a defendant must "confirm[] review of the PSR" before "a court's oral adoption of PSR-recommended conditions gives the defendant an opportunity to object." *Id.* at 560.

11

We are also guided in this case by *United States v. Omigie*, 977 F.3d 397 (5th Cir. 2020), decided shortly after *Diggles*. There, as here, the defendant was subject to a supervisory release condition that "did not appear in [the defendant's] PSR," which had been adopted by the district court, "but was instead listed in a separate sentencing recommendation." *Omigie*, 977 F.3d at 407. The court concluded that if the separate sentencing recommendation had not been disclosed to the defendant, the condition had to be excised. *See id.*

The parties agree that the district court was referring at sentencing to an appendix to the Judge's Sentencing Options Worksheet. As the Government concedes, the record does not "conclusively show that Kendall viewed the appendix with his attorney." There also is no evidence in the record that the worksheet was given either to the defendant or his counsel. The Federal Rules of Criminal Procedure do not compel disclosure of sentencing worksheets in revocation proceedings, unlike PSRs. *Compare* FED. R. CRIM. P. 32, *with* FED. R. CRIM. P. 32.1. Without disclosure in some form, Kendall could not have known of the appendix.

The Government contends that the lack of objection is, in itself, evidence of knowledge. We see silence, at most, as evidence that counsel was not alert to the need to ask about the appendix. Here, the district court orally stated a lengthy list of special conditions, asked for any objection, then mentioned the appendix. The listed conditions were the same conditions that had been recommended at the hearing by the probation officer. The court's final addendum was the first reference to the appendix. The clear implication of the court's adoption was that the conditions in the appendix reflected the list he had enumerated just before. The district court did not indicate that the court was adopting any additional provisions from the appendix or that the location monitoring condition, as set forth in the appendix, had a poison pill — an additional, unmentioned requirement for

No. 24-40727

home detention.  Certainly, the district court did not offer an opportunity for counsel to object or, "at a minimum, to ask for more specificity about the conditions."  *See United States v. Martinez*, 15 F.4th 1179, 1181 (5th Cir. 2021).

The Government also suggests that the oral pronouncement by the district court — "I am going to impose location monitoring for a period of six months" — was sufficient, independent of any adoption, to include the home detention element of the location monitoring condition.  After all, home detention is listed as a part of the location monitoring condition in the final judgment.

The Government's argument does not persuade.  Home detention is an especially confining condition of supervised release, which Congress has cautioned should only be imposed as "an alternative to incarceration."  *See* 18 U.S.C. § 3563(b)(19).  We agree with a concurring opinion that the "'only as an alternative to incarceration' phrase also emphasizes to a sentencing judge that home confinement is [a] very[] restrictive condition."  *United States v. Polydore*, 493 F. App'x 496, 504 (5th Cir. 2012) (RICHMAN, J., concurring).  Home detention is not a natural follow-on to a location monitoring requirement, such that pronouncement of the latter would alert an attorney and defendant to the former.  Nor can the pronouncement requirement be elided by tucking several conditions into the one.

The district court abused its discretion by adopting a list of conditions without notice or opportunity to object.  *See United States v. Fields*, 977 F.3d 358, 367 (5th Cir. 2020).  Accordingly, the two non-moot conditions not properly pronounced must be stricken.[2]

_____

[2] A note on why we do not remand to clarify the record confusion.  In *Omigie*, the case relied on earlier in this opinion, "[t]he PSR and sentencing recommendation were

No. 24-40727

## CONCLUSION

We VACATE in part the judgment of sentence and REMAND for amendment of the written judgment to remove the two unpronounced conditions. We DISMISS Kendall's challenge to the other conditions of his supervised release as moot.

-------------------

filed into the record under the same document number." 977 F.3d at 407 n.47. The panel remanded for the district court to determine whether the separate recommendation had been disclosed to the defendant "*as part of his PSR.*" *Id.* at 407 (emphasis added). Such a course was logical there, because at sentencing the district court had properly confirmed that defense counsel and the defendant had read and discussed the PSR. If the sentencing recommendation had been part of the PSR, the correct procedure had been followed.

Here, even if the document had been disclosed, the district court did not confirm that Kendall had reviewed it. Nor, as discussed above, is there evidence allowing an *inference* of review — or an opportunity to object to the worksheet's introduction. Accordingly, a remand to develop the factual record would be a futile exercise.

14